RTF:SHB
F.# 2003R00079

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | I N F O R M A T I O N |
| - against - | Cr. No. 05-CR-201 (JG) (T. 18, U.S.C., §§ 371 and 3551 et seq.) |
| JONATHAN EINHORN, also known as "Yanni," | |
| Defendant. | |

- - - - - - - - - - - - - - - - - X

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

I. The Defendant

1. The defendant JONATHAN EINHORN, also known as "Yanni," was a private real estate investor who purchased and sold real estate in Brooklyn, New York, and elsewhere. In particular, the defendant purchased properties that were sold at public auctions pursuant to mortgage and tax lien foreclosure actions brought in New York State Supreme Court, Kings County. The defendant was the owner of BK Homes, a company the defendant created for his real estate business. The defendant occasionally purchased property with individual partners, including John Doe #1, whose identity is known to the Grand Jury.

II. <u>The Referee</u>

2.  Edward Reich ("Reich") was an attorney admitted to practice law before the Courts of the State of New York. Reich was appointed by a Justice of the New York State Supreme Court, Kings County, to be a referee responsible for selling at public auction a property located at 342 Rutland Road in Brooklyn, New York (the "Property").

III. <u>The Sale of Property at Public Auction</u>

3.  Pursuant to Section 1351(1) of the New York State Real Property Actions and Proceedings Law, a Justice may appoint a referee to sell real estate in mortgage and tax lien foreclosure actions. After a referee is appointed, upon a determination that the borrower has defaulted in the payment of the mortgage, a Justice may then order that the property be sold at a public auction under the direction of the referee.

4.  On January 16, 2001, a Justice ordered that the Property be sold at public auction. The Judgment of Foreclosure and Sale ("Judgment") for this property required that the proceeds from the sale be used to pay the unpaid balances on the mortgage or tax liens, the statutory fee of the referee, the expense of the sale, fees for the plaintiffs' attorneys and any outstanding taxes, assessments, or charges for sewer, rents or water rates. The Judgment further required that if the referee intended to apply for additional fees beyond the fee set by

statute, he was required to make an application to the court.

5. The Terms of Sale for the Property required that 10 percent of the purchase money be paid as a deposit in cash or certified check at the time and place of sale. The balance of the purchase money was to be paid 30 days after the auction. If the purchaser failed to pay the balance, the purchaser would be deemed to be in default, and would risk forfeiting the deposit. The Property would then have to be sold at public auction again. If the Property were sold at lower prices, after a default, the purchaser would be responsible for the difference between the original price and the price at the resale, up to the amount of the deposit.

6. Referees appointed by Supreme Court Justices owed a duty of loyalty and honest services to the Supreme Court, the New York State Unified Court System ("UCS") and the citizens of New York State. As such, they were required to conduct auctions and sell properties in the best interest of those parties, and without regard to their own personal gain.

IV. Federal Funding of the Unified Court System

7. During each of the fiscal years ending March 31, 2003 and March 31, 2004, the UCS received at least $1,000,000 in Federal funding to be used for the operation of trial courts of general and limited jurisdiction. These funds were used, in part, for the operation of the New York State Supreme Court.

V.  Overview of the Scheme

8.  On or about and between May 15, 2002 and January 9, 2003, in an attempt to influence and reward Reich, the defendant JONATHAN EINHORN gave Reich a total of $2,500 in two cash bribes while Reich was acting in his capacity as a court-appointed referee supervising the sale of the Property. In exchange for these bribes, Reich: (1) reduced the successful bid of EINHORN by $20,000, from $283,000 to $263,000; (2) delayed the final closing date of the Property; (3) prevented EINHORN from defaulting on his purchase; and (4) ultimately returned a $30,000 security deposit to EINHORN and his partner, John Doe #1.

A.  Auction of the Property: The First Bribe Payment

9.  On or about May 15, 2002, the Property was placed for sale at a public auction because the owners of the Property defaulted on their mortgage with Chase Manhattan Bank. This auction was held at the New York State Supreme Court Courthouse, located at 360 Adams Street, Brooklyn, New York. Reich was appointed by a Justice as the referee responsible for accepting bids and selling the Property.

10. The defendant JONATHAN EINHORN placed the highest bid of $283,000, and entered into a partnership with John Doe #1 to purchase the Property. Their goal was to purchase the Property and sell it to another purchaser, whom they intended to secure by the time of the closing.

11. After the auction, the defendant JONATHAN EINHORN complained to Reich that he should have been permitted to purchase the Property at a lower price. In response, Reich told EINHORN, in sum and substance, that Reich would take care of it. Reich then lowered the sale price of the Property by $20,000, from the defendant's final bid of $283,000 to $263,000. In exchange, EINHORN gave Reich a cash payment of $2,000. EINHORN and John Doe #1 then gave Reich a $30,000 deposit as required by the Property's Terms of Sale.

12. The defendant JONATHAN EINHORN, on behalf of BK Homes, and John Doe #1 then executed a Memorandum of Sale dated May 15, 2002, stating that the Property's sale price was $263,000 and that they had paid Reich a $30,000 deposit to secure their purchase of the Property.

B. Post-Auction Negotiations: The Second Bribe Payment

13. Subsequently, the defendant JONATHAN EINHORN and John Doe #1 attempted to find a purchaser for the Property. However, EINHORN encountered difficulties securing a purchaser, and thus needed to adjourn the closing date of the Property several times beyond the thirty-day period specified in the Terms of Sale. A final closing date was ultimately scheduled for October 22, 2002, after which EINHORN and John Doe #1 would be held in default if they could not close their purchase of the Property.

14. On or about October 21, 2002, the defendant JONATHAN EINHORN still had not secured a purchaser for the Property. As a result, EINHORN met with Reich and asked him to request an additional delay from Rosicki, Rosicki and Associates ("Rosicki"), the law firm representing the mortgage holder. Reich did so, and obtained an additional adjournment until October 28, 2002. Reich then informed EINHORN, in sum and substance, that he had performed a big favor for EINHORN and that it was going to cost him.

15. On or about January 3, 2003, because the mortgage holder had settled with the original owner of the property, Rosicki sent a letter to Reich, informing him, in substance, that the mortgage holder could not sell the property to the defendant JONATHAN EINHORN and, therefore, the foreclosure sale of 342 Rutland Road was voided. The letter further directed REICH to refund the $30,000 deposit to EINHORN.

16. On or about January 6, 2003, the defendant JONATHAN EINHORN asked Reich about his deposit. Reich stated, in sum and substance, that although he received the Rosicki letter, he nonetheless performed a big favor for EINHORN and still expected to be paid.

17. On or about January 9, 2003, the defendant JONATHAN EINHORN and John Doe #1 visited Reich at Reich's offices at 26 Court Street, Brooklyn, New York. During that meeting,

Reich agreed to return the $30,000 deposit and briefly left his office. Before Reich returned, EINHORN placed $500 in cash on Reich's desk, under some paperwork. After Reich returned to the office, he refunded the $30,000 deposit by writing two checks in the amount of $15,000 each, one for EINHORN and the other for John Doe #1. EINHORN then indicated to Reich that the cash was underneath the paperwork, and Reich responded by stating, "This never happened. This never happened." John Doe #1 then informed Reich, "That was from both of us, just so you know."

## CONSPIRACY TO GIVE BRIBES

18. Paragraphs 1 through 17 of this Information are realleged and incorporated as if fully set forth in this paragraph.

19. On or about and between May 15, 2002 and January 9, 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JONATHAN EINHORN, together with others, did knowingly and willfully conspire to corruptly give, offer, and agree to give things of value, to wit, United States currency, to a person, to wit, a referee appointed by a Justice of the New York State Supreme Court, intending to influence and reward the referee in connection with the business and a series of transactions of the New York State Supreme Court involving $5,000 or more, all in violation of Title 18, United States Code, Section 666(a)(2).

20. It was a part of the conspiracy that the defendant JONATHAN EINHORN gave cash bribes to Reich in his capacity as a referee appointed by the New York State Supreme Court, intending to influence and reward Reich.

21. It was a further part of the conspiracy that, in exchange for these cash bribes, Reich reduced the price of property sold at public auction to an amount lower than the defendant JONATHAN EINHORN'S successful bid.

22. It was a further part of the conspiracy that, in exchange for these cash bribes, Reich adjourned the defendant JONATHAN EINHORN's final closing date, prevented EINHORN's default, and refunded EINHORN's deposit for property sold at public auction.

23. In furtherance of the conspiracy and to effect its objectives, the defendant JONATHAN EINHORN, together with others, committed and caused the commission of, among others, the following:

## OVERT ACTS

a. On or about May 15, 2002, Reich, acting in his capacity as a court-appointed referee, conducted an auction of property located at the Property.

b. On or about May 15, 2002, Reich agreed to lower and did lower the sales price of the Property by $20,000, from the defendant JONATHAN EINHORN'S successful bid of $283,000 to

$263,000.

c. On or about May 15, 2002, EINHORN gave Reich $2,000 cash.

d. On or about October 21, 2002, EINHORN asked Reich to obtain an adjournment of the final closing date of the Property, which was scheduled for October 22, 2002.

e. On or about October 22, 2002, Reich obtained an adjournment of the final closing date of the Property until October 28, 2002.

f. On or about January 9, 2003, Reich refunded the $30,000 deposit for the purchase of the Property to EINHORN and to John Doe #1.

g. On or about January 9, 2003, EINHORN and John Doe #1 gave Reich $500 cash.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

*Rosly R. Mauskopf*
ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

FORM DBD-34
JUN. 85

No: 05-CR-      Action: _Criminal_

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL *Division*

## THE UNITED STATES OF AMERICA

vs.

JONATHAN EINHORN
also known as "Yanni,"

            Defendant.

# INFORMATION

(T. 18, U.S.C., §§ 371 and 3551 et seq.)

ROSLYNN R MAUSKOPF, United States Attorney

_A true bill._

_____
                                 _Foreman_

_Filed in open court this_ _____ _day_,

_of_ _____ A.D. _____

_____ _Clerk_

_Bail, $_ _____

Steven H. Breslow, AUSA 718-254-6374